UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                              Case No. 8:14-cr-217-T-33EAJ

MAHMOUD ALDISSI, a/k/a Matt,
and ANASTASSIA BOGOMOLOVA,
a/k/a Anastasia
_____/

**ORDER**

This matter comes before the Court pursuant to Defendants' Joint Motion to Dismiss Indictment (Doc. # 43), filed on September 30, 2014. On October 10, 2014, the Government filed a Response to Defendants' Joint Motion to Dismiss Indictment. (Doc. # 61). For the reasons that follow, the Defendants' Motion is denied as stated herein.

**I.   Background**

On May 28, 2014, Defendants were charged by indictment with the following: Count 1 – Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349; Counts 2 through 8 – Wire Fraud in violation of 18 U.S.C. § 1343; Counts 9 through 13 – Aggravated Identity Theft in violation of 18 U.S.C. § 1028A; Count 14 – Falsification of Records involving Federal Investigations in violation of 18 U.S.C. § 1519; and Count 15

– Falsification of Records involving Federal Investigations in violation of 18 U.S.C. § 1519. (See Doc. # 1).

Defendants contend that on February 15, 1998, Defendant Aldissi incorporated Fractal Systems, Inc. ("FSI") for the purpose of scientific research and development. (Doc. # 43 at 1). Furthermore, on December 22, 2004, Defendant Bogomolova incorporated Smart Polymers Research Corporation ("SPRC"), also for the purpose of scientific research and development. (Id.). Through the corporations, Defendants claim that they submitted proposals to various government agencies' – Small Business Innovative Research ("SBIR") and Small Business Technology Transfer ("STTR") – programs in hopes of being granted funding for innovative scientific research. (Id.).

On January 29, 2014, federal agents executed a search warrant at Defendants' residence. (Id. at 2). At that point in time, Defendants sought counsel, who began an investigation into the facts of this case. (Id.). The investigation undertaken by defense counsel included reaching out to witnesses who could potentially provide exculpatory information for the defense. (Id.). On September 30, 2014, Defendants filed their Joint Motion to Dismiss Indictment. (Doc. # 43). Thereafter, the Government responded in opposition to the Motion on October 10, 2014. (Doc. # 61).

2

Defendants argue, by way of the present Motion, that certain witnesses have been instructed not to speak with the defense and that others may have been given similar instructions. (Doc. # 43). Specifically, Defendants contend that:

> The defense has been prejudiced due to the Government's impermissible interference with the Defendants' access to potential witnesses who hold information both material to the case at hand and beneficial to the defense. This impermissible government interference due to threats and intimidation of witnesses has violated the Defendants' Fifth Amendment right to due process of law and their Sixth Amendment right to compulsory process for obtaining witnesses in their favor.

(Id.). The Government responded that Defendants have not met the standard for dismissal due to prosecutorial misconduct as is required to dismiss an indictment. (Doc. # 61).

## II.  Legal Standard

In federal criminal prosecutions, the Constitution guarantees the right to an indictment by an unbiased grand jury. United States v. Pabian, 704 F.2d 1533, 1535 (11th Cir. 1983). The Fifth Amendment's statement that no person shall be held to answer for a capital or otherwise infamous crime "unless on presentment or indictment of a Grand Jury" necessarily presupposes "an investigative body 'acting independently of either prosecuting attorney or judge.'"

United States v. Dionisio, 410 U.S. 1, 16 (1973)(quoting Stirone v. United States, 361 U.S. 212, 218 (1960)). The grand jury's historic role has been to serve as a "protective bulwark standing solidly between the ordinary citizen and the overzealous prosecutor." Dionisio, 410 U.S. at 17. The reality that grand jury proceedings are "secret, ex parte and largely under the control of the federal prosecutor, magnifies this concern." United States v. Serubo, 604 F.2d 807, 816 (3d Cir. 1979).

Federal courts possess the power and duty to dismiss federal indictments obtained in violation of the Constitution or laws of the United States. Pabian, 704 F.2d at 1536. In addition, federal courts have a "supervisory power over the administration of justice to regulate the manner in which grand jury investigations are conducted." (Id.)(quoting Serubo, 604 F.2d at 816).

Although the federal judiciary exercises a supervisory role over federal grand juries, that role must be informed by a recognition that dismissal of an indictment for prosecutorial misconduct is an "extreme sanction which should be infrequently utilized." United States v. Owen, 580 F.2d 365, 367 (9th Cir. 1978). The function of this Court must also be defined in terms of the constitutional separation of

powers between the judiciary and the executive, each branch vested with its own purposes and powers in relation to the grand jury. The "tradition and the dynamics of the constitutional scheme of separation of powers define a *limited* function for both court and prosecutor in their dealings with the grand jury." United States v. Chanen, 549 F.2d 1306, 1312 (9th Cir. 1977), *cert. denied,* 434 U.S. 825, (1977) (emphasis in original). The Chanen court reasoned:

> In resolving disputes involving district court, prosecutor and/or grand jury, some appellate courts have attempted to pigeonhole the grand jury into one of the three branches of government created by the first three articles of the Constitution. For example, it has been said that the grand jury is essentially an agency of the court, and that it exercises its powers under the authority and supervision of the court. On the other hand, it has been asserted that grand juries are basically law enforcement agencies and are for all practical purposes an investigative and prosecutorial arm of the Executive branch of the government. To the extent that these apparently conflicting statements reflect the view that the functions of the grand jury are intimately related to the functions of court and prosecutor, we have no disagreement with them. That view is irrefutable as a matter of fact. But under the constitutional scheme, the grand jury is not and should not be captive to any of the three branches. The grand jury is a preconstitutional institution, given constitutional stature by the Fifth Amendment but not relegated by the Constitution to a position within any of the three branches of the government.

(Id. at 1312)(citations omitted).

District courts may exercise their discretionary power to dismiss an indictment on grounds of prosecutorial misconduct where a sufficient showing of prejudice has been made. United States v. Holloway, 778 F.2d 653, 655 (11th Cir. 1985). More recently, this Circuit has determined that prejudice to the defendant is an essential element when a criminal defendant seeks dismissal of an indictment due to violations of the Constitution. United States v. O'Keefe, 825 F.2d 314, 318 (11th Cir. 1987).

However, the law dealing with this particular issue makes it plain that if a sufficiently egregious case of prosecutorial misconduct is shown, this Court has the inherent power to direct the indictment to be dismissed. Pabian, 704 F.2d at 1533.

## III. **Analysis**

On September 30, 2014, Defendants filed the present Motion seeking an Order granting a Motion to Dismiss Indictment. (Doc. # 43). Specifically, Defendants requested (1) for the Court to hold an evidentiary hearing, (2) for the Court to dismiss the indictment, and (3) to allow the Defendants to conduct depositions of the witnesses in this matter. (Id. at 20). Subsequently, on October 10, 2014, the Government filed the United States Response to Defendants'

Joint Motion to Dismiss Indictment. (Doc. # 61). The Court finds Defendants' request for an evidentiary hearing and depositions to be unwarranted, and therefore will only address the issue of alleged witness intimidation as a grounds for dismissal of the indictment.

First, Defendants aver that on April 29, 2014, two federal agents visited the home of Dr. Elena Komarova, a staff scientist with FSI between 2002 through 2011, to question her regarding the Defendants. (Doc. # 43 at 3). On May 6, 2014, Dr. Komarova met with defense attorneys and informed them that federal agents told her "any communications between her and the attorneys representing Defendants would look bad for her." (Id.). "Dr. Komarova interpreted this statement to be a threat by the agents that criminal charges could be filed against her as well, and would be filed against her if she spoke with defense counsel." (Id.).

Second, Defendants contend that on February 25, 2014, Krista Reber, FSI Research assistant, was interviewed by two federal agents at her place of work. (Id. at 3). On April 4, 2014, Ms. Reber spoke with defense attorneys and relayed that she "had felt threatened by the federal agents, that she had felt pressure to answer the agents' questions a certain way,

and that she had felt pressure to not speak with defense counsel." (Id. at 4).

Third, Defendants states that on February 27, 2014, Andrew Cannons, Assistant Professor at USF, was interviewed by two federal agents at his place of work. (Id. at 5). On May 13, 2014, Dr. Cannons met with defense attorneys and "it was apparent that Dr. Cannons was hesitant to speak with defense counsel." (Id.).

Fourth, Defendants assert that on January 30, 2014, Craig Johnson, physicist and owner of Field Forensics, was interviewed by two federal agents regarding his relationship with Defendants. (Id. at 6). Craig Johnson executed a monitoring agreement form to allow federal agents to record phone calls with Dr. Aldissi. (Id.). On April 11, 2014, Mr. Johnson met with defense attorneys to give them information regarding Dr. Aldissi's use of his lab space. (Id. at 7). Lastly, Defendants contend that there are additional witnesses who have not been responsive to Defendants' attempt at contact or who have refused to speak with Defendants' counsel regarding the facts of this case. (Id.).

The Government refutes Defendants' allegations, and states that there was no prosecutorial misconduct in this case. (Doc. # 61). The Government also asserts that even if

there had been misconduct, the indictment should not be
dismissed without a showing of prejudice to Defendants.
(Id.). The Government's contention represents the holding of
the Court of Appeals for the Fifth Circuit in United States
v. McKenzie, 678 F.2d 629 (5th Cir.), cert. denied, 459 U.S.
1038 (1982). In McKenzie, the Court held that: "Whether the
court is acting under its supervisory authority or its duty
to protect the constitutional rights of defendants, an
indictment may be dismissed only where the defendant's case
has been unfairly prejudiced." 678 F.2d at 631.

Here, Defendants have not set forth sufficient evidence
that they have been unduly prejudiced due to prosecutorial
misconduct, which is an "essential element" of the standard
required for dismissal in this Circuit. See O'Keefe, 825 F.2d
at 314. In fact, the very allegations set forth in Defendants'
Motion demonstrates that Defendants had the opportunity to
meet with and interview each of the witnesses described. (See
Doc. # 43). Additionally, the Court is unpersuaded by the
Defendants use of other individuals that have not responded
to defense inquiries as a basis for dismissal of this
indictment.

Further information that weighs against dismissal
includes the "open file" discovery that has occurred in this

case. (Doc. # 61 at 4). In turning over agents' reports, the Government has engaged in an open and forthright discovery plan that is non-prejudicial to Defendants. Defendants' unsubstantiated allegation that witnesses' decisions not to speak to the defense resulted from prosecutorial misconduct does not support the requested relief of dismissal of the indictment.

While this Court recognizes that "threats or intimidation made by the Government, including agents, that dissuade a potential defense witness from testifying constitutes such a violation of the defendant's fifth amendment right to due process of law and his sixth amendment right to compulsory process for obtaining witnesses in his favor," that is not the case before this Court. Webb v. State of Texas, 93 S. Ct. 351 (1972). For the reasons stated above, the Defendants' Motion to Dismiss the indictment is denied.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants' Joint Motion to Dismiss Indictment (Doc. # 43) is **DENIED.**

(2) Defendants' request for evidentiary hearing is **DENIED.**

(3) Defendants' request for depositions of prospective witnesses is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 22nd day of October, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:   All Counsel of Record