```
            UNITED STATES DISTRICT COURT
             MIDDLE DISTRICT OF FLORIDA
                   TAMPA DIVISION
```

UNITED STATES OF AMERICA

v.                             Case No. 8:14-CR-217-T-33EAJ

MAHMOUD ALDISSI and ANASTASSIA
BOGOMOLOVA
_____/

**ORDER**

This matter comes before the Court pursuant to Defendants' Motion to Reopen Suppression Hearing (Doc. # 263) and the Government's Response (Doc. # 260), both filed on March 18, 2015. For the reasons that follow, the Court denies the Motion.

**I.   Background**

Defendants Mahmoud Aldissi and Anastassia Bogomolova are charged in a superseding indictment with one count of conspiracy to commit wire fraud pursuant to 18 U.S.C. § 1349; seven counts of wire fraud pursuant to 18 U.S.C. § 1343; five counts of aggravated identity theft pursuant to 18 U.S.C. § 1028A; and two counts of falsification of records involving federal investigations pursuant to 18 U.S.C. § 1519. (Doc. # 134). The charges relate to Defendants' procurement of United States government contracts under the Small Business Innovation Research Program and Small Business Transfer

Technology Research Program of the Small Business Act.

On September 30, 2014, Defendants filed three motions to suppress evidence: (1) Joint Motion to Suppress Statements and Evidence Illegally Obtained Pursuant to Miranda v. Arizona, 384 U.S. 436 (1966) (Doc. # 45); Joint Motion to Suppress Evidence and for Return of Seized and Forfeited Property and Demand for Hearing Pursuant to Franks v. Delaware, 438 U.S. 154 (1978) (Doc. # 46); and Joint Motion to Suppress Evidence Illegally Obtained Due to an Invalid Search Warrant (Doc. # 47).

The Magistrate Judge held an evidentiary hearing on the Motion to Suppress related to the alleged failure to comply with Miranda (Doc. # 103), and issued a Report and Recommendation on December 5, 2014, recommending denial of the Motion (Doc. # 113). Thereafter, on December 15, 2014, the Magistrate Judge held an evidentiary hearing on the Motion to Suppress predicated upon Franks. (Doc. # 123). The Magistrate Judge issued her Report and Recommendation, recommending denial of the Franks Motion, on January 9, 2015. (Doc. # 142). Thereafter, on January 15, 2015, the Magistrate Judge issued her Report and Recommendation on the third Motion to Suppress, recommending denial of that Motion as well. (Doc. # 143). This Court adopted the Magistrate Judge's Reports and Recommendations, and upon doing so, the Magistrate Judge's

findings of fact and conclusions of law became the findings of fact and conclusions of law of this Court. (Doc. ## 131, 172, 173).

At this juncture, Defendants request that this Court re-open the suppression hearing proceedings. To summarize, during the first suppression hearing, various Government witnesses testified that no one patted down Dr. Aldissi at any time during a search of the Defendants' residence on January 29, 2014. Contrary to that testimony, Dr. Aldissi testified at the initial suppression hearing that he was, indeed, patted down. The Magistrate Judge resolved the issue in favor of the Government and determined that Dr. Aldissi was not patted down. That determination was made in the context of assessing whether either of the Defendants were in custody at any time during the January 29, 2014, search, implicating the protections of Miranda. Ultimately, the Magistrate Judge determined that Dr. Aldissi and Dr. Bogomolova were not in custody. She also found that any statements Defendants made to law enforcement were freely given and that Defendants freely and voluntarily signed consent forms which authorized law enforcement to search and seize various items of electronic media as well as items from Defendants' storage unit. Specifically, during the search of Defendants' residence, agents and computer technicians discovered a number of

3

external USB flash drives, USB devices, CDs, DVDs, and floppy discs. Defendants executed a separate consent form permitting agents to search and seize these items. (Doc. # 113 at 7). In addition, Dr. Aldissi signed a DCIS Form 33 - Permissive Authorization for Search and Seizure with respect to Defendants' storage unit. (Doc. # 113 at 6).

After careful consideration, this Court agreed with the Magistrate Judge's findings and adopted her Reports and Recommendations. However, during the third week of Defendants' criminal trial, and months after the Magistrate Judge conducted the evidentiary hearings on the relevant Motions to Suppress, it came to light that Special Agent Norman Conley did, in fact, pat down Dr. Aldissi during the January 29, 2014, search of Defendants' residence. Specifically, during the evening of March 9, 2015, Agent Conley reported to AUSA Palermo that he patted Dr. Aldissi down. AUSA Palermo promptly brought this information to the attention of the Court on March 10, 2015. The Court held an evidentiary hearing on March 13, 2015, in which Agent Conley confirmed that he did conduct a pat down of Dr. Aldissi. (Doc. # 254).[1]

In connection with this new testimony, Defendants have

---

[1] The Court commends AUSA Palermo for his candor and his immediate disclosure of Agent Conley's pat down to the Court and to opposing counsel.

4

moved to reopen the suppression hearing. In addition to pointing out Agent Conley's testimony regarding the pat down of Dr. Aldissi, Defendants indicate that "a compelling video of the search has emerged." (Doc. # 263 at 1). According to Defendants, the video reflects that Agent Conley "was brandishing his shotgun in his left hand" during the execution of the search warrant. (Id. at 6). This Court has not seen the video, but will assume that Defendants' representation that Agent Conley brandished a shotgun during the execution of the search is true.[2]

This Court is now called upon to determine whether Agent Conley's pat down of Dr. Aldissi and brandishing of a firearm tip the scales in favor of finding that either of the Defendants were in custody during the search of their residence. The Court must also resolve the issue of whether these new developments mandate a finding that Defendants' statements to law enforcement and consent to search their electronic media and storage unit were involuntarily given.

---

[2] Defendants indicate that Agent Conley's brandishing of his firearm contradicts Agent Conley's March 13, 2015, testimony before this Court. Specifically, on March 13, 2015, Agent Conley testified that he wore a shotgun "attached to a sling . . . across [his] chest" and specified: "I had it positioned with one hand pointed down." (Doc. # 256 at 12). In addition, the video depicting Agent Conley brandishing a firearm contradicts the Magistrate Judge's December 5, 2015, Report and Recommendation, in which she states that law enforcement officers did not "display" or "unholster their firearms." (Doc. # 113 at 5, 14).

5

**II. Findings of Fact Concerning January 29, 2014, Search**

On January 27, 2014, the Honorable Thomas G. Wilson, United States Magistrate Judge, signed a search and seizure warrant for 108 4th Street, Belleair Beach, Florida 33786, which is the Defendants' residence. (Doc. # 113 at 2). He permitted the search and seizure of: business records, computer(s), and electronic media. Judge Wilson added a handwritten note stating: "This warrant does not allow seizure of computers or cell phones."[3] (Id. at 2-3).

On the morning of January 29, 2014, agents from NASA Office of Inspector General ("NASA"), Army Criminal Investigation Command ("CID"), and Defense Criminal Investigative Service ("DCIS") gathered in a "staging location" near Defendants' residence to prepare for the execution of the search warrant. (Id. at 3). Among the agents who gathered were Special Agent Wade Krieger of NASA ("Agent Krieger"), Special Agent Philip Mazzella of NASA ("Agent

---

[3] On January 29, 2014, at 5:15 p.m., Judge Wilson signed a search and seizure warrant authorizing the search of particular items listed in Attachment A and the seizure of particular items listed in Attachment B, including CDs, external hard drives, thumb drives, and floppy disks. Agents Jones and Galle testified that Judge Wilson said they would need to return for an additional warrant if they wanted to take any computer items from the residence that could not be copied during the execution of the initial search warrant. While other agents were executing the January 27, 2014, search warrant, Agents Jones and Galle left Defendants' residence to obtain the supplemental search warrant. (Doc. # 113 at n.4).

6

Mazzella"), Special Agent Gina Galle of CID's Major Procurement Fraud Unit ("Agent Galle"), Supervisory Special Agent Patricia Searle of NASA ("Agent Searle"), and Special Agent Tara Jones of DCIS ("Agent Jones"). (Id.). There were also computer technicians, an administrative assistant, and other agents who participated in the execution of the warrant. (Id.).

Thereafter, a number of the agents left the staging location and drove to Defendants' residence in several vehicles, including a local police vehicle and unmarked vehicles.[4] (Id. at 3-4). Dr. Bogomolova noticed individuals wearing vests in her front yard and heard them knocking loudly on the door to announce that they were there to execute a warrant. (Id. at 4). Upon opening the door, Dr. Bogomolova observed at least five armed agents. (Id.). Dr. Aldissi followed Dr. Bogomolova to the door. (Id.).

Defendants exited the house and waited with the agents in the front of the residence. (Id.). After Defendants exited, several agents entered the residence to conduct a protective sweep. (Id.). While the protective sweep of the home was conducted, Defendants remained outside the residence with other agents for about five to ten minutes. (Id. at 5).

---

[4] The agents executed the warrant after waiting for Defendants' son to leave for school.

After Defendants returned to their residence, they were separated from one another, and each Defendant was interviewed by various agents for several hours. (Id. at 6). Defendants made oral statements and tendered written statements to law enforcement. (Id. at 6). In addition, during this time, Dr. Aldissi gave his consent to law enforcement to search and seize items in Defendants' storage unit and both Defendants consented to the search and seizure of electronic media. (Id. at 6-8).

At approximately 2:00 p.m. on that same day, Dr. Aldissi left the residence to pick up Defendants' son and returned to the house while the agents were still there. (Id. at 8). It is at this time that Agent Conley patted down Dr. Aldissi in the Defendants' garage. (Doc. # 256 at 5).

After Dr. Aldissi returned with Defendants' son, Dr. Bogomolova took their son to a room to work on his homework. (Doc. # 113 at 9). Dr. Bogomolova was also observed cleaning the house. (Id.). The agents remained in Defendants' residence until approximately 7:00 p.m. to complete the initial search warrant and to execute the supplemental search warrant authorized by Judge Wilson at 5:15 p.m. for the seizure of CDs, external hard drives, thumb drives, and floppy disks. (Id.).

While both Defendants provided written statements to the

8

agents, those documents have not been admitted into evidence during Defendants' criminal trial, and the evidence portion of the trial is now closed.[5]  In fact, the Court notes that Defendants' filed the present Motion after the Government rested.  However, three photographs of the storage unit and the consent form that led to the taking of the photographs have been admitted into evidence.  Thus, the Court will examine whether any new evidence calls into question the Court's prior rulings on Defendants' Motions to Suppress.

### III. **Defendants were not in Custody**

While the burden is on the Government to show that a defendant's in-custody statements were voluntary and obtained in compliance with Miranda,[6] see Missouri v. Seibert, 542 U.S. 600, 608 n.1 (2004), the burden is on the defendant to establish he was in custody and the statements were made in response to government questioning. United States v. de la Fuente, 548 F.2d 528, 533-34 (5th Cir. 1977),[7] see also United

---

[5] To place the presentation of Defendants' current Motion in context, the Court notes that Defendants' criminal trial commenced on February 23, 2015. AUSA Palermo raised the issue of Agent Conley's pat down in open Court on March 10, 2015, and this Court held an evidentiary hearing in which Agent Conley testified on March 13, 2015.  The Government rested its case on March 17, 2015. (Doc. # 262).  Defendants filed the present Motion on March 18, 2015.

[6] Miranda v. Arizona, 384 U.S. 436 (1966).

[7] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding

9

States v. Peck, 17 F. Supp. 3d 1345, 1354-55 (N.D. Ga. 2014) (stating that de la Fuenta remains the law of the Eleventh Circuit).

Whether an individual in "in custody" is an objective inquiry. J.D.B. v. N.C., 131 S. Ct. 2394, 2402 (2011). "Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." Thompson v. Keohane, 516 U.S. 99, 112 (1995) (internal quotation marks, alteration, and footnote omitted). "[T]he actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant." United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996). "[U]nder the objective standard, the reasonable person from whose perspective 'custody' is defined is a reasonable innocent person." Id.

A totality of the circumstances analysis determines

---

precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

whether one is in custody. Among the factors to be considered are: the location of the questioning; the duration of the questioning; statements made during the interview; presence or absence of physical restraints during the questioning; and release of the interviewee at the end of questioning. Howes v. Fields, 132 S.Ct. 1181, 1189-90 (2012) (collecting cases). In addition to the Howes factors, the Eleventh Circuit also considers: "whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled." United States v. Street, 472 F.3d 1298, 1309 (11th Cir. 2006). "No particular fact in the 'custody' analysis is outcome determinative—[the court] simply weighs the totality of the circumstances." United States v. Brown, 441 F.3d 1330, 1349 (11th Cir. 2006).

This Court's consideration of all of the relevant factual considerations leads to a finding that Defendants were not in custody. First and foremost, the Defendants were questioned in their home, which is a neutral and familiar setting. See Brown, 441 F.3d at 1348 (collecting cases). This factor weighs against a finding of custodial interrogation. See Id. at 1348-49 (noting that an officer accompanied defendant throughout the house for safety reasons but finding familiar setting weighed in favor of non-custodial finding); see also

11

United States v. Opoku, 210 F. App'x 848, 852 (11th Cir. 2006) (per curiam)(unpublished)("[Defendant] freely moved about his apartment during the entire interview, albeit under the agents' supervision as a safety precaution.").

In addition, neither of the Defendants were questioned for an inappropriate duration. Dr. Aldissi was questioned for approximately one and a half to two hours. (Doc. # 113 at 6). It appears that Dr. Bogomolova was questioned for approximately three to four hours. (Id. at 8). This does not militate in favor of a custody finding. See United States v. McDowell, 250 F.3d 1354, 1363 (11th Cir. 2001) (finding that approximately four hour detention at border was not custodial as "there is no fixed limit to the length of questioning"). This is particularly so when Defendants were free to come and go as they pleased during the process, and Dr. Aldissi did leave the residence during the questioning of Defendants to pick up his child from school.

In addition, although Dr. Aldissi was patted down, there is no other evidence that any agents or other law enforcement persons physically constrained Defendants, such as by handcuffing them, making them lie on the ground, or confining them to a police car. Further, Defendants were not arrested at the conclusion of the interview. And while the Agents were indeed armed, and Agent Conley was displaying a firearm at the

12

initiation of the search warrant, these facts do not compel a finding that Defendants were in custody. The fact that Dr. Aldissi voluntarily returned to his home with his minor child tends to demonstrate that the Agents were not threatening Defendants (either physically or with abusive language). Rather, the record reflects that Dr. Bogomolova helped Defendants' son with homework and did other chores around the house during the relevant time. (Doc. # 113 at 9).

This Court previously determined that Defendants failed to carry their burden of proof of showing that they were in custody. After considering Defendants' new evidence and the totality of the circumstances, the Court arrives at the same conclusion. Accordingly, even though Agent Conley patted down Dr. Aldissi and brandished a firearm, the Court determines that neither Dr. Aldissi nor Dr. Bogomolova were in custody.

### IV. Consent was Freely and Voluntarily Given

The Court reaches the same conclusion regarding whether Defendants' consent to search and seize their storage unit property and electronic media was freely and voluntarily given. Similar to the determination of whether a person is in custody, the determination of whether a defendant gives consent to search voluntarily "depends on the totality of the circumstances." United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001). Some of the factors that the Court considers

13

in assessing the voluntary nature of a Defendant's consent include "the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found." Id.

That Dr. Aldissi was patted down and that Agent Conley had a firearm drawn at the time of the execution of the search warrant are important facts that must be considered as part of the totality of the circumstances. However, upon due consideration, these facts do not transform Defendants' voluntarily given consent into a coerced consent. Here, Agent Conley's choice to pat down Dr. Aldissi and to display a firearm during the execution of the search warrant are not "coercive police procedures." Instead, these measures were undertaken to ensure officer safety. Furthermore, Defendants' education and intelligence (which are especially noteworthy in this case), as well as their cooperation with law enforcement, militate in favor of finding their consent voluntary. And "a defendant's knowledge of his right to refuse consent is a factor but not a requirement in determining voluntariness." United States v. Espinosa-Orlando, 704 F.2d 507, 512 (11th Cir. 1983).

Furthermore, crediting each and every assertion

Defendants have raised at this late juncture of the trial, the Court notes that the Eleventh Circuit has nonetheless approved consent searches in cases that involved far more coercive circumstances than those presented here. See United States v. Hidalgo, 7 F.3d 1566, 1567-68, 1571 (11th Cir. 1993)(defendant arrested by SWAT team members who broke into his house, woke him, and forced him to lie on the ground at gunpoint); United States v. Garcia, 890 F.2d 355, 357-58, 360-62 (11th Cir. 1989)(14 armed agents arrested defendant outside his home, group of agents conducted protective sweep of his home, defendant was handcuffed, officers refused defendant's consent to limited search, and officers told defendant they would secure his home and apply for a search warrant if he did not consent to a full search); Espinosa-Orlando, 704 F.2d at 510, 513 (defendant stopped at gunpoint, forced to lie on ground, and gave consent while officer had weapon drawn and pointed at the ground). The Court has considered the factual circumstances presented and determines that Defendants' consent to search and seize their storage unit property and electronic media was voluntarily given.

## V. Conclusion

The belated testimony that Agent Conley patted down Dr. Aldissi and brandished of a firearm are important facts that should be included in the Court's calculus when determining

15

whether Defendants were in custody and whether Defendants consented to various searches and seizures. Taking into consideration these new factual circumstances, the Court reaches the same conclusion that it reached when it denied Defendants' Motions to Suppress. Defendants' present Motion is therefore denied.

Accordingly, it is

**ORDERED, ADJUDGED**, and **DECREED**:

Defendants' Motion to Reopen Suppression Hearing (Doc. # 263) is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 19th day of March, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record