```
            UNITED STATES DISTRICT COURT
             MIDDLE DISTRICT OF FLORIDA
                   TAMPA DIVISION
```

UNITED STATES OF AMERICA

vs.                                           8:14-cr-217-T-33EAJ

MAHMOUD ALDISSI and
ANASTASSIA BOGOMOLOVA
_____/

**ORDER**

This matter comes before the Court pursuant to Defendants' Joint Motion for Judgment of Acquittal (Doc. # 283), filed on March 27, 2015, and Defendant Bogomolova's Supplemental Motion for Judgment of Acquittal (Doc. # 285), filed on April 2, 2015. The Government has responded to both Motions. (Doc. ## 286, 288). For the reasons stated below, Defendants' Motions are denied.

**I.  Background**

Defendants Aldissi and Bogomolova were changed in a superseding indictment with one count of conspiracy to commit wire fraud pursuant to 18 U.S.C. § 1349; seven counts of wire fraud pursuant to 18 U.S.C. § 1343; five counts of aggravated identity theft pursuant to 18 U.S.C. § 1028A; and two counts of falsification of records involving federal investigations pursuant to 18 U.S.C. § 1519. (Doc. # 134). The charges related to Defendants' procurement of multiple United States government contracts awarded to two small business (Fractal

Systems, Inc. and Smart Polymers Research Corporation) under the Small Business Innovation Research Program and Small Business Technology Transfer Research Program of the Small Business Act. (Id.). Aldissi is the President and Owner of Fractal Systems, and Bogomolova is the President and Owner of Smart Polymers.

Among other allegations, the Superseding Indictment charged that Defendants prepared and caused to be prepared materially false and fraudulent proposals for awards under the aforementioned Small Business Act programs. (Id. at 5). For example, the Superseding Indictment charged that Defendants stole the identities of real persons and submitted fraudulent endorsements on those persons' behalf to accompany Defendants' fraudulent proposals, which were submitted to secure lucrative government contracts. (Id. at 5). The Superseding Indictment also alleged that Defendants made false statements in their proposals for government contracts regarding costs, employees, facilities, consultants, and other material matters. (Id.). Further, the Superseding Indictment alleged that Defendants falsified, altered, concealed and otherwise made false records, such as a Joint Venture Agreement and various timesheets, with the intent to impede and obstruct the National Science Foundation's investigation of Defendants and

their businesses. (Id. at 10-11).

The trial spanned four weeks. Defendants orally moved for a judgment of acquittal on March 17, 2015, after the close of the Government's case. (Doc. # 278). The Defendants once again orally moved for a judgment of acquittal on March 18, 2015, after the close of Defendants' case. (Doc. # 279). On March 20, 2015, the jury returned a verdict of guilty as to each Defendant and as to each count of the Superseding Indictment. (Doc. ## 270, 271). The Court denied the oral Motions for Judgment of Acquittal on March 23, 2015. (Doc. # 273). At this juncture, Defendants seek a judgment of acquittal.

## II. Rule 29 Motion for Judgment of Acquittal

A motion for acquittal is governed by Federal Rule of Criminal Procedure 29. "As the text of the Rule indicates, and as courts and other authorities have recognized, '[t]he sole ground for a post-trial motion under Rule 29(c) is that the evidence was insufficient to sustain a conviction.'" United States v. Hunt, 412 F. Supp. 2d 1277, 1282 (11th Cir. 2005)(quoting United States v. Miranda, 425 F.3d 953, 963 (11th Cir. 2005)). "The standard for assessing the sufficiency of evidence is whether any reasonable view of the evidence, considered in the light most favorable to the government, is

3

sufficient to allow a jury to find guilt beyond a reasonable doubt." United States v. Leonard, 138 F.3d 906, 908 (11th Cir. 1998)(citing United States v. Bush, 28 F.3d 1084, 1087 (11th Cir. 1994)).

### III. Analysis

The present Motions generally "adopt previous oral motions for Judgment of Acquittal that were made during the trial," and with the exception of the identity theft counts, the Motions do not advance any specific arguments. (Doc. # 283 at 1; Doc. # 285 at 1). As to the identity theft counts, Defendants contend that acquittal is required because the identity theft statute – 18 U.S.C. § 1028A - "does not criminalize the conduct that the Government established at trial." (Doc. # 283 at 1). The Court denies the Motion as follows.

####   A.   The Evidence of Guilt was Overwhelming

The issue presented is whether a reasonable jury could find that the evidence established Defendants' guilt on all charges beyond a reasonable doubt. Williams, 390 F.3d at 1323. Juries are free to choose between reasonable constructions of the evidence. United States v. Vera, 701 F.2d 1349, 1357 (11 Cir. 1983). In analyzing the evidence, "it is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion

4

except guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." United States v. Harris, 20 F.3d 445, 452 (11th Cir. 1994).

Here, a reasonable trier of fact could find, and did find, that the evidence established Defendants' guilt beyond a reasonable doubt as to all counts of the Superseding Indictment. The evidence presented over the course of the trial overwhelmingly demonstrated that Defendants conspired and confederated to defraud the United States using wires and other instrumentalities that crossed state lines. Through the submission of fraudulent proposals which contained false statements (regarding materials terms, such as facilities and employees), Defendants sought and received SBIR and STTR awards. As a part of the scheme, Defendants unlawfully used the identities of numerous individuals to create false endorsements on behalf of those individuals. The United States, including the National Science Foundation, relied upon the false endorsements. And, when the National Science Foundation initiated an investigation into Defendants' conduct, Defendants fabricated and altered documents in an attempt to cover up their crimes and innoculate their illegal conduct. In sum, the Motions for Judgment of Acquittal should be denied.

### B. Aggravated Identity Theft

Defendants raise four arguments concerning the aggravated identity theft counts: (1) Defendants did not "use" or "possess" anyone else's identity; (2) the letters and signature blocks are not a "means of identification;" (3) R.S., the identity theft victim listed in Count 11 of the Superseding Indictment was dead at the time of the identity theft; and (4) Counts 9-11 of the Superseding Indictment concern the identities of corporations and universities, not "actual" persons.  The Court notes that these arguments concern matters beyond the scope of a post-verdict motion for judgment of acquittal under Rule 29, Fed. R. Crim. P. See Miranda, 425 F.3d at 963 (Rule 29 Motions test whether the evidence is sufficient to demonstrate a defendant's guilt beyond a reasonable doubt.).  However, the Court will address the merits of each argument below to find that Defendants have not provided any basis for acquittal.

#### 1. "Use" or "Possess"

In United States v. Joseph, 567 F. App'x 844, 848 (11th Cir. 2014), the Court indicated that "there are several ways a defendant can commit aggravated identity theft under 18 U.S.C. § 1028A." That Court enumerated the following elements for the offense of aggravated identity theft: (1) knowingly possess or use; (2) another person's means of identification;

6

(3) without lawful authority; (4) during or in relation to the commission of certain felony offenses. Id.  In Joseph, the qualifying felony offense was making a false statement in a United States passport application, and the Court explained that "'means of identification' is defined as 'any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual.'" Id. at 848, n.2.  The Court provided the following "examples:" "a name, social security number, date of birth, and official driver's license." Id.  The Court also explained that "without lawful authority" means "the defendant used it without permission" or "even if he took the means of identification with permission, he used it for an unlawful or illegitimate purpose." Id. at 848.

In this case, the Court rejects Defendants' contention that they did not "use" or "possess" anyone else's identity. The aggravated identity theft statute criminalizes using someone else's "name" in the commission of a felony (in this case, wire fraud), and the jury found that Defendants did exactly that.  Defendants created false endorsement letters and used computer programs to affix false signatures of identity theft victims to such endorsements.  The Government admitted evidence showing that Defendants maintained a physical and an electronic bank of the victims' identifying

information. <u>See</u> Government's Exhibits 52, 54X. The evidence showed that Defendants used and possessed, unlawfully, the means of identification of approximately 80 people. The jury heard from twenty of Defendants' victims during the trial.

The Court agrees with the Government's statement that "the evidence fully and completely supports the charged counts of aggravated identity theft for, in creating letters and emails ostensibly from real people in support of their work and committing to their projects, the Defendants were unlawfully masquerading as them." (Doc. # 286 at 5). The Defendants "passed themselves off" for the victims by "pretending to be" the victims. (<u>Id.</u> at 5-6). As a result, the Defendants received forty-four SBIR awards. Writing a false letter and signing someone else's name on it is a classic example of using or possessing someone else's identity. The Court accordingly denies the Motion as to Defendants' argument that Defendants did not use anyone else's identity.

### 2.   "**Means of Identification**"

Defendants also contend that "the letters and the included signature blocks cannot be considered a 'means of identification'" as defined by the identity theft statute. (Doc. # 283 at 2). The Government's evidence included letters and emails which included the victims' names, signatures,

8

titles (or former titles), work addresses, email addresses, employer information, phone numbers, and, in at least one case, the victim's home addresses and home phone number. The victim's names in conjunction with the other information are plainly the victim's identification. 18 U.S.C. § 1028(d)(7) states, "In this section and section 1028A . . . the term 'means of identification' means any **name** . . . that may be used, **alone or in conjunction with any other information, to identify a specific individual.**" (emphasis added). The Eleventh Circuit has explained: "We have no cause to depart from the plain meaning of the statute, under which a person's name on a check qualifies as a means of identification under § 1028A." United States v. Little, 552 F. App'x 937, 939 (11 Cir. 2014); see also United States v. Lewis, 443 F. App'x 493, 495-96 (11th Cir. 2011)("As the signature of an individual's name specifically identifies that individual, we conclude that forging another's signature constitutes the use of a 'means of identification.'").

It should also be noted that, beyond drafting false letters of endorsement and attaching the victims' names to such letters, Defendants used the victims' names in the underlying proposals for SBIR awards. For example, Defendants falsely used the names of certain individual victims of identity theft by falsely indicating that such individuals

9

would be involved in the work described in the proposals, when, in fact, the individuals were not involved in the proposals or the work in any manner. Thus, the Court denies the Motions to the extent Defendants claim that they did not use the means of identification of another.

### 3. Deceased Victims

The first witness called by the Government in this case was Malika Stegamat. (Doc. # 239). Her testimony demonstrated that her husband, "R.S.," was deceased at the time of the conduct described in the Superseding Indictment. Defendants argue that R.S., accordingly, may not be considered a victim of identity theft. Defendants' arguments are foreclosed by binding Eleventh Circuit precedent. In United States v. Zuniga-Arteaga, 681 F.3d 1220, 1223-25 (11th Cir. 2012), the Court held that 18 U.S.C. § 1028A "criminalizes the use of a real person's identity, regardless of whether that person is currently living." The Eleventh Circuit's interpretation of the aggravated identity theft statute in this regard is no outlier. A number of Circuit Court decisions are aligned in rejecting any interpretation of the statute that requires the victim of identity theft to be currently living. See e.g. United States v. Jimenez, 507 F.3d 13, 22 (1st Cir. 2007); United States v. LaFaive, 618 F.3d 613, 617 (7th Cir. 2010); United States v. Kowal, 527 F.3d 741, 747 (8th Cir. 2008);

<u>United States v. Maciel-Alcala</u>, 612 F.3d 1092, 1102 (9th Cir. 2010). Upon due reflection, the Court roundly rejects Defendants' contention that R.S. is not a victim of identity theft based on his status as a deceased person.

### 4. <u>Corporate and University Identities</u>

Defendants also contend that "each letter that gave rise to Counts 9-11 was presented as a letter of endorsement from a corporate entity or university" and thus, the "names" on those letters were not from an "actual person" as required by the aggravated identity theft statute. (Doc. # 283 at 2). The Court rejects this argument. Although the evidence Defendants reference in this argument shows that certain letters were purportedly drawn on corporate or university letterhead, each letter also reflected the name of an individual person whose identity was stolen.

As correctly argued by the Government, "[s]tealing a real person's identity (e.g. A.G., R.S.) <u>and</u> stealing the identity of a corporation (e.g. Northrop Grumman, Osram Semiconductors) or a university (e.g. LSU, UF) simultaneously cannot make the unlawful use or possession of a real person's means of identification any less the unlawful use or possession of a real person's means of identification." (Doc. # 286 at 9). The Superseding Indictment does not charge (nor could it) that Defendants stole the identities of artificial entities, such

as corporations. The evidence showed that Defendants did not discriminate in utilizing the identities of actual individuals and artificial entities, but with respect to the aggravated identity counts, the Superseding Indictment charged, and the Government proved, that Defendants engaged in aggravated identity theft involving real persons. The Defendants' arguments concerning corporations and universities as purported identity theft victims are accordingly invalid.

### 5. *Anastassia Bogomolova*

In addition to adopting the arguments presented in the Joint Motion for Judgment of Acquittal, Defendant Bogomolova has filed a supplemental Motion for Judgment of Acquittal (Doc. # 288), in which she contends that she must be acquitted of the aggravated identity theft counts because she could not reasonably foresee that her husband "would alter letters of support/documents that would allegedly include the means of identification of a person." (Doc. # 285 at 1). Defendant Bogomolova argues that because Defendant Aldissi "was a highly qualified scientist" with "a PHD in Polymer Chemistry, 27 patents," and numerous publications, Defendant would not "need to doctor/alter the letters of support." (Id. at 1-2). Defendant Bogomolova also indicates that "[t]he evidence failed to establish that Dr. Bogomolova participated in the

procurement, alteration or use of any of the documents which form the basis for the aggravated identity theft counts." (Doc. # 285 at 2).

The Court rejects Defendant Bogomolova's arguments after careful consideration. The Government admitted evidence, including EPA proposal number EP-D-11-065, signed by Defendant Bogomolova (not signed by Defendant Aldissi). (Government Exh. 7.2A). The proposal contained the same group of false representations (e.g. A.C. being a consultant), a representation about the involvement of Ultrafast Systems, LLC, and the corresponding collection of false letters. (Id.). Two of the associated false letters are specifically addressed to Defendant Bogomolova. (Id.).

The jury could also surmise from Defendant Bogomolova's participation in the rest of the conspiracy and scheme that the identity theft was foreseeable and attributable to her as a conspirator and schemer. In addition, her conduct related to the obstruction counts (particularly requesting that Komarova generate Smart Polymers timesheets to be backdated) places Defendant Bogomolova squarely in the middle of the conspiracy and scheme.

The Court accordingly denies the Joint Motion for Judgment of Acquittal and Defendant Bogomolova's Supplemental

Motion for Judgment of Acquittal.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants' Joint Motion for Judgment of Acquittal (Doc. # 283) and Defendant Bogomolova's Supplemental Motion for Judgment of Acquittal (Doc. # 285) are **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>13th</u> day of April, 2015.

*/s/ Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: All Counsel of Record